IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| TERRY C. JOHNSON, | |
| Plaintiff, | |
| v. | Law No. 13-cv-3227-SEM-TSH |
| ABDI TINWALLA, | |
| Defendant. | |

## AFFIDAVIT

I, ABDI TINWALLA, M.D., being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify, and that if called to testify, would state as follows:

1. I am a psychiatrist licensed to practice in the State of Illinois.

2. I am currently employed by Wexford Health Sources, Inc., as a psychiatrist, to provide services at the Department of Human Services Treatment and Detention Facility in Rushville, Illinois.

3. During my time practicing at the Rushville TDF, I have had an opportunity to see and treat a patient by the name of Terry Johnson.

4. On June 23, 2013, I saw the Plaintiff, Terry Johnson, after Mr. Johnson had submitted a request slip asking for mental health services. The Plaintiff reported that he had an anger problem and that he had spoken with his institutional therapist, who had referred him for the services of a mental health professional. (Rushville clinical records, page 40).

5. During my evaluation of the Plaintiff on June 23, 2013, the Plaintiff reported that he was having increased irritability since December of 2012. The Plaintiff also reported that he recently wanted to assault a staff member (DHS investigator James Clayton) and added that he

had other staff members that were "on his case". The Plaintiff reported that at times he felt hopeless. (Rushville clinical records, page 40).

6. After the Plaintiff reported his symptoms, I discussed a treatment plan with the Plaintiff, as well as the benefits and risks of a low-dose mood stabilizing medication. I informed the Plaintiff, that in my professional opinion, it may help with his anger and irritability. The Plaintiff gave his consent and signed a consent form for the receipt of the medication Risperdal. (Clinical records, pages 39-40).

7. Shortly after the Plaintiff signed the consent form, the Plaintiff became upset and agitated, scratched his name off of the consent form with a pen and left my office. (Clinical records, page 40).

8. At that time, I was not only aware of the Plaintiff's current mental status, but also his mental health history. I was aware that the Plaintiff had a history of erratic and aggressive behavior, and the Plaintiff had just informed me that he wished to harm a member of DHS staff.

9. As such, I made the decision, on June 23, 2013, to move forward, and to provide the Plaintiff access to the prescription medication Risperdal, if he would so choose to take it.

10. My decision was not to place the Plaintiff on forced psychotropic medication, as no individual would be allowed to inject the Plaintiff, or to physically force him to take the medication, solely based on my individual prescription order.

11. At the Rushville TDF, there is a separate set of policies and procedures for the administration of forced psychotropic medication. This process involves a second opinion by a psychiatrist, review by a committee, and also provides the patient the ability for a hearing, and to present evidence on his behalf. It was not my intent, and I did not make any order for the

administration of forced psychotropic medication, and as a result, these above policies were not relevant or required for my order.

12. Given the Plaintiff's extreme behavior, as well as his intent to inflict harm on staff members, I felt, in my professional opinion, that the Plaintiff may need immediate access to voluntary psychotropic medication, if he was to reconsider his position regarding taking Risperdal. I felt comfortable with this decision because I had already discussed with the Plaintiff the benefits and risks of the medication, and the Plaintiff had originally given his consent. However, my medication order was never written to be a "forced" administration of medication.

13. The Plaintiff had the right to refuse the medication at any time following June 23, 2013, however, I felt that it was important that the Plaintiff have immediate access to this medication should he desire to take it.

14. It is my understanding that residents of the Rushville Treatment and Detention Facility have the ability, at any time, to request and receive an explanation of all medications they are receiving, and to refuse all medications. This option would have been available to the Plaintiff at any time following June 23, 2013.

15. My order for the Plaintiff was for him to receive a 1 milligram dosage of Risperdal. Based on my review of the records, the Plaintiff continued to have access to a 1 milligram dose of Risperdal, and at no time was his prescription increased following my initial order.

16. While it is scientifically possible for a patient to experience a number of side effects from the receipt of a 1 milligram dosage, outside of an allergic reaction to medication, the chances of a patient having weight gain, nausea, vomiting, lactation, dizziness, and

lightheadedness, all at the same time, from a 1 milligram dosage of Risperdal, in the absence of any allergic reaction, is extremely unlikely in my experience.

17. Following my order for the Plaintiff to receive the medication Risperdal, I scheduled the Plaintiff to come back for follow-up evaluations to monitor his progress, or to re-discuss his opinion if he chose to refuse the medication. However, the Plaintiff refused to show for his follow-up appointment on August 4, 2013. (Clinical records, page 41).

18. After the Plaintiff refused to appear for his August 4, 2013, visit, I sent notice to the Plaintiff that his medication would be discontinued if he did not keep his next appointment on August 11, 2013. (Clinical records, page 41).

19. The Plaintiff again refused to appear for his August 11, 2013 appointment, and as a result, I ordered that his Risperdal medication be discontinued because I did not have an opportunity to assess the Plaintiff regarding the side effects and efficacy of the medication. (Clinical records, page 41).

20. I never recommended, or ordered, that the Plaintiff receive a forced administration of psychotropic medication. The Plaintiff was free, at all times, to refuse any medication he chose.

21. I did not provide the Plaintiff any additional written notice of the medication, as the Risperdal medication was not a forced psychotropic medication.

22. I was later notified on February 22, 2014 that the Plaintiff was upset and frustrated, and may need access to medication. As such, I entered a telephone order for the Plaintiff to have access to Ativan. There is no indication from the medical records that the Plaintiff had any medical reaction or side effects from the Ativan. (Clinical Records, p. 46)

13-cv-3227
Page 4

23. According to my review of the Plaintiff's medical records, the Plaintiff never complained of any medical problems from June 23, 2013, through August 11, 2013. More specifically, the Plaintiff never complained of any medical problems during that time, in my professional opinion, that could have been related to his ingestion of the 1 milligram of Risperdal. I have not received, nor reviewed, any records indicating the Plaintiff ever had any reactions, or side effects, to his receipt of Risperdal.

24. I am competent to testify regarding all facts as set forth herein.

25. I make this affidavit in support of my motion for summary judgment.

FURTHER AFFIANT SAYETH NAUGHT.

_____
ABDI TINWALLA, M.D.

Subscribed and Sworn to before me this
8th day of Nov, 2014.

_____
Notary Public

OFFICIAL SEAL
SHARON CUTRELL
Notary Public - State of Illinois
My Commission Expires Aug 5, 2017

DRB/cs (02227-T7690)
25734800_1