UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TERRY C. JOHNSON,
            Plaintiff,

v.                                          CASE NO. 13-CV-3227-SEM-TSH

ABDI Tinwalla
            Defendant

## AFFIDAVIT

I, TERRY C. JOHNSON, being first duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify, and that if called to testify, would state as follows:

1). I am competent to testify regarding all facts as set forth herein.

2). I make this affidavit in support of my Response to the defendant's ("deft(s)") motion for summary judgment.

3). On June 23, 2013 I refused all treatment, including psychiatropic medication. I was competent to make decisions concerning my health and welfare. My primary therapist Kenneth Queen ("Queen") never

referred me for mental health services.

4). On June 23, 2013, I had explained to the defendant how the internal affairs person Clayton had been harassing me since 2012. I explained that on February 5, 2013 how Clayton was calling me names and threatening to press charges on me, while I watched a video for another lawsuit. The grievance is attached herein, as Exhibit ("Exh") one.

5). On June 23, 2013, I told the deft that February 13, 2013 Clayton had made threats to make sure I died in the tdf, all because I refused to come down to his office again to review the video footage in my then, pending, and still pending lawsuit. The threat was witnessed by another resident, attached herein, an affidait of Resident Thomas Horne, as Exh 2)

6). On June 23, 2013, I explained to the deft of the plethora of grievance's I filed on Clayton to no avail, staff would not do anything. I told deft that I filed grievances on February 13, 2013, March 12, 2013, March 15, 2013, March 19, 2013, March 20, 2013, March 21, 2013 (2-on this day). Attached herein, as Gro. Exh 3),

7). On June 23, 2013, I explained to deft, that I was placed on all male escort for my own protection by Kunkel, however Clayton kept up his harrassment

-2-

with impunity. That on April 18, 2013 Clayton harrassed me yet again during a room shakedown, despite me being in handcuff's and in pain, no staff would do anything. Clayton kept on name calling, then entered my room then removed my typewriter that was brand new, and I filed a grievance, to no avail. (see Gro. Exh 3 P.p. 19-22).

8). I told deft that on 6-23-13, during this 4-18-13 event that I had become so dispondent I had sought help from him, and that the deft ordered me a one time order of Ativan. (Exh 4. Clinical Record. bates stamp 54).

9). On June 23, 2013 I told deft about my problem with Clayton, up to May 30, 2013. At no time on June 23, 2013 did I insinuate any intent to harm or plans to attack Clayton. I spoke in past tense, not present or future, on of what occurred May 30, 2013, and that all issues with Clayton was resolved on May 31, 2013 by the security director Kunkel. (Doc. 75 pum7 6-19).

10). At my disposition and filings I misspoke in regards to who referred me to see the deft, Although, Dr. prezell had some influance in my decision, not any clinical, it was the behavior committee on 6-18-13 who made the referral upon my request, and mines alone. (see Exh 5. Pp 1-2)

11). On June 23, 2013, I was competent to make decisions concerning my health and treatment. No court has declared me to be incompetent.

-3-

12) On August 5, 2013, after I found out about the actual medication Risperdal, I filed a grievance. I was so despondent, that I could not even recall which month I had saw the deft. I complained of excessive weight gain. That deft's actions were an terrorist attack, that caused me extreme emotional distress. (Exh. 6).

13). In response to my grievance the deft never mentioned me making any threats, only that the forced order was to take at bedtime. He, never, denied it was ordered against my knowledge, will or consent. (Exh. 6, P. 2).

14). The deft on 6-23-13 never told me about the dangerous and debilatating side effects that Risperdal caused. I only found out about some of them in late september or early october, from my family members. However, the true extent came much later, when I obtained written information from my family and deft, such as the rash in my mouth in august 2013, which deft told me in his motion for summary judgment (Doc. 70. PAR 16; Exh's 7-8).

15). On June 23, 2013, the plaintiff knew nothing about the atte or him being diagnosed as biplor or any of the diagnosis. Until late July or early August 2013, and I had some disagreements with the atte. (Exh 9 P. 1).

-4-

16). On August 30, 2013 I met with Dr. Prezell and my primary queen. I took issue with her saying that I fabricated stories. I told her that I was an inaccurate historian of my past or life because I cannot recall everything in my younger years. (Exh 9 P. 2)

17). On Aug 30, 2013 I told Dr. Prezell that I use to write short stories and poems, a lot of fiction and use to create wild stories and shared with prison staff, and I use to tell them anything in my stories.

18). Dr. Prezell on Aug 30, 2013 told me that part of the reasons she diagnosed me with bipolar was based on me being unable to write and enjoy short story writing and poems.

19). On June 23, 2013 the deft did not even have my clinical files, nor made any written documentation as such. I wrote my primary Dr. Hernanez, to obtain copies of all staff that checked out my files and inspected my records, and June 23, 2013 isnt on it. (Exh 10. P.p 1-2).

20). On August 4, 2013 when I found out that the deft had entered the secret order of Risperdal, I was shocked, and felt violated as a victim of a crime. I could not believe a doctor would do such a thing to me, this is why I distrust doctor's today.

-5-